# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF GEORGIA
# STATESBORO DIVISION

| | |
|---|---|
| KARL C. MITCHELL, | |
| Plaintiff, | CIVIL ACTION NO.: 6:18-cv-004 |
| v. | |
| GREGORY DOZIER, MARTY ALLEN, JOSEPH HUTCHESON, VIVIAN BELL, SHELLY WALKER, RONNIE SHUMAKE, FREDDIE DAVIS, TIMOTHY BROOKS, JANE DOE, | |
| Defendants. | |

## ORDER and MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Plaintiff, currently housed at Georgia State Prison ("GSP") in Reidsville, Georgia, submitted a Complaint pursuant to 42 U.S.C. § 1983 contesting various conditions of his confinement. (Doc. 1.) Plaintiff has also filed Motions to Proceed *in Forma Pauperis*, (doc. 4), for Subpoenas, (doc. 6), and for Expert Witness and Physical Examination, (doc. 8).

Having reviewed Plaintiff's Motion, I find that he does not have the funds to pay the filing fee in this case. Thus, the Court **GRANTS** his Motion to Proceed *in Forma Pauperis*, (doc. 4), and **DIRECTS** Plaintiff to carefully read and follow the below instructions regarding that Motion.

Additionally, I have conducted the requisite frivolity review and have found Plaintiff's primary claims so implausible that he fails to state a claim upon which relief can be granted. Plaintiff's remaining allegations potentially set forth viable claims for relief. However, those claims are so unrelated that they cannot be brought in the same lawsuit. Consequently, for the reasons set forth more fully below, I **RECOMMEND** that the Court **DISMISS** Plaintiff's claims

that Defendants have implanted transmitters into Plaintiff and all claims related to those allegations. I also **RECOMMEND** that the Court **DISMISS** Plaintiff's claims for monetary damages against Defendants in their official capacities and **DISMISS** Plaintiff's claims against Defendant Gregory Dozier.[1] As to Plaintiff's remaining claims, the Court **DIRECTS** Plaintiff to file an Amended Complaint in accordance with the instructions below within **fourteen (14) days** of this Order.

In his first Motion for Subpoenas, Expert Witness, and Mental and Physical Examination, Plaintiff asks the Court to appoint an expert to "collect the memory" of five individuals. (Doc. 6.) Plaintiff's second Motion for an Expert Witness and for a Mental and Physical Examination requests that the Court appoint an expert to locate the transmitters that Defendants have placed inside him. (Doc. 8.) These requests, like Plaintiff's claim that Defendants are controlling his thoughts, emotions, and actions via implanted transmitters, are fitting fodder for a science fiction novel but have no place in the Federal Rules of Civil Procedure. Moreover, even if these requests sounded in reality, the Complaint in this case has not yet been served, and thus, discovery has not begun. For these reasons, the Court **DENIES** Plaintiff's Motions for Subpoenas and Expert Witness and Physical Examination. (Docs. 6, 8).

---

[1] A "district court can only dismiss an action on its own motion as long as the procedure employed is fair. . . . To employ fair procedure, a district court must generally provide the plaintiff with notice of its intent to dismiss or an opportunity to respond." Tazoe v. Airbus S.A.S., 631 F.3d 1321, 1336 (11th Cir. 2011) (citations and internal quotations marks omitted). A Magistrate Judge's Report and Recommendation ("R&R") provides such notice and opportunity to respond. See Shivers v. Int'l Bhd. of Elec. Workers Local Union 349, 262 F. App'x 121, 125, 127 (11th Cir. 2008) (indicating that a party has notice of a district court's intent to *sua sponte* grant summary judgment where a magistrate judge issues a report recommending the *sua sponte* granting of summary judgment); Anderson v. Dunbar Armored, Inc., 678 F. Supp. 2d 1280, 1296 (N.D. Ga. 2009) (noting that R&R served as notice that claims would be *sua sponte* dismissed). This R&R constitutes fair notice to Plaintiff that his suit is barred and due to be dismissed. As indicated below, Plaintiff will have the opportunity to present his objections to this finding, and the District Court will review *de novo* properly submitted objections. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72; see also Glover v. Williams, No. 1:12-CV-3562-TWT-JFK, 2012 WL 5930633, at *1 (N.D. Ga. Oct. 18, 2012) (explaining that magistrate judge's R&R constituted adequate notice and petitioner's opportunity to file objections provided a reasonable opportunity to respond).

## PLAINTIFF'S ALLEGATIONS[2]

In this lawsuit, Plaintiff primarily claims that staff members at GSP have inserted electronic transmitters into him in order to monitor and control his emotions, movements, bodily functions, and statements. (Doc. 1.) Plaintiff states that on or about November of 2016, "a GSP laboratory technician" injected him with electronic transmitters. (Id. at p. 2.) He states that the transmitters "enable GSP medical and security staff and inmates to monitor Plaintiff's cell, emotions, movements, statements, and thoughts, and to review his memory." (Id.) He alleges that the staff and inmates conduct this monitoring using "tablets and ear pieces." (Id. at pp. 2–3.) He further claims that "[b]y way of the transmitters, the medical staff control and monitor the functioning of Plaintiff's neurological system and special sense organs, including his brain, ears, heart, and lungs." (Id. at p. 3.) Plaintiff maintains that the GSP medical staff, security staff, and inmates have taken these measures in order to make Plaintiff "appear as if he believes everyone wishes him harm; is a pathological liar; wishes something were medically wrong with him; suffers neurological injury that inhibits his concentration and thinking and sensory organ functioning; and, among other things, hears voices." (Id.) He claims that GSP medical and security staff and inmates accomplish these objectives by "using prison and gang ebonics and insinuating implications to cause Plaintiff to recall his past in society and in prison while simultaneously toying with his nerves, muscles, and organs." (Id.)

Following his claims regarding insertion of electronic transmitters, Plaintiff jumps to alleging that Defendants Timothy Brooks, Shelly Walker, and Freddie Davis used force against him on January 16, 2017. (Id. at pp. 3–4.) He states that on that date, while he was being evaluated by a psychologist, someone placed a small puddle of urine in his bed. (Id. at p. 3.)

---

[2] The below-recited facts are taken from Plaintiff's Complaint, (doc. 1), and are accepted as true (except as indicated below) as they must be at this stage.

After his evaluation, he refused to return to his cell. (Id. at p. 4.) Thus, Brooks and Walker used force to compel him to do so. (Id.) Apparently after this use of force, Brooks and Walker escorted Plaintiff to the medical unit for an evaluation. (Id.) Following the evaluation, Brooks jerked Plaintiff off of his gurney and slammed Plaintiff's forehead against the concrete floor, causing Plaintiff's "left eyebrow [to] split open and to swell and bruise." (Id.) After another evaluation, Brooks and Walker escorted Plaintiff back to his cell, and Brooks forced Plaintiff to lie down in the puddle of urine on his bed. (Id.) Fifteen minutes later, Davis entered Plaintiff's cell and threatened to use a Taser against him. (Id.) After Plaintiff got out of his bed, Davis punched Plaintiff in his right ear while Walker and Brooks looked on. (Id.) Brooks and Walker then entered the cell and slammed Plaintiff onto the concrete floor. (Id.)

Plaintiff next levies allegations regarding events that he says occurred in October of 2017. (Id. at p. 5.) He claims that on October 26, 2017, Defendants Ronnie Shumake and Joseph Hutcheson entered his cell and Hutcheson "was wearing a Georgia Bulldogs shirt, the team which Plaintiff's undefeated, superbowl winning youth football team replicated." (Id.) On October 31, 2017, Hutcheson, Shumake, and Defendant Marty Allen entered Plaintiff's dormitory. (Id. at pp. 5–6.) Allen confronted Plaintiff and had him step inside of his cell. (Id.) Plaintiff states that Shumake, Hutcheson, and other security staff then "rushed, grabbed, and slammed and pinned Plaintiff on the concrete floor." (Id. at p. 6.) Despite the fact that Plaintiff was not resisting or acting aggressively, Shumake choked Plaintiff while other staff hit and kneed him. (Id.)

Lastly, Plaintiff contends that he received disciplinary reports and was placed in disciplinary segregation as a result of the incidents alleged in his Complaint. (Id. at pp. 6–7.) He claims that while he received four disciplinary reports, he was only guilty of the one charge of

4

refusing to return to his cell as directed by Brooks on January 16, 2017. (Id.) Plaintiff alleges that Defendant Jane Doe investigated the charges against him and, despite knowing that he was innocent of the charges, found him guilty. (Id.) Though unclear, he also maintains that Defendant Vivian Bell affirmed Defendant Doe's finding of guilt. He contends that he was punished with loss of privileges due to these findings. (Id. at p. 7.) Plaintiff also alleges that on January 5, 2018, he was advised that he is being recommended for placement in Tier II disciplinary segregation for having received five disciplinary infractions within the last year even though he has only received four disciplinary reports. (Id.)

Plaintiff claims that Defendants' actions against him are an attempt to prevent him from participating in criminal court cases against Defendant that Plaintiff claims arose out of his prior civil lawsuits. (Id. at pp. 1, 8.) As his requested relief, Plaintiff requests that the Court order Defendants to immediately release him into a witness protection program, appoint a physician and/or surgeon to "evaluate Plaintiff and locate and remove the transmitters in Plaintiff," and to award him compensatory and punitive damages. (Id. at p. 9.)

## DISCUSSION

### I. Plaintiff's Motion to Proceed *in Forma Pauperis*

Plaintiff seeks to proceed *in forma pauperis*. (Doc. 4.) After reviewing Plaintiff's application, it appears that he lacks sufficient resources to prepay the filing fee. Accordingly, the Court **GRANTS** Plaintiff leave to proceed *in forma pauperis*. The Court sets out the following instructions for the procession of this case that Plaintiff is advised to read closely.

Plaintiff is hereby advised that under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321, all prisoners, even those who are allowed to proceed *in forma pauperis*, must pay the full filing fee of $350.00 in full. 28 U.S.C. § 1915(b)(1). Plaintiff must also pay

5

the full appellate court filing fee if a Notice of Appeal is filed. Prisoner litigants allowed to proceed *in forma pauperis* must pay an initial partial filing fee of twenty percent (20%) of the greater of the average monthly deposits to, or average monthly balance in, the prisoner's account for the 6-month period immediately preceding the filing of the complaint. Prison officials are then required to collect the balance of the filing fee by deducting twenty percent (20%) of the preceding month's income credited to the prisoner's account. 28 U.S.C. § 1915(b)(2). This payment shall be forwarded to the Clerk of Court "each time the amount in [Plaintiff's] account exceeds $10 until the full filing fees are paid." Id. The entire filing fee must be paid even if this suit is dismissed at the outset because it is frivolous, malicious, fails to state a claim, or seeks monetary damages against a defendant who is immune from such relief.

In addition to requiring payment of the full filing fee, the Act requires prisoners to exhaust all administrative remedies **before filing** a federal lawsuit that challenges "prison conditions" in a civil action. 42 U.S.C. § 1997e; see 18 U.S.C. § 3626(g)(2). All prisoner civil rights actions are subject to dismissal if the prisoner has not exhausted the available administrative remedies with respect to each claim asserted. Moreover, even if his Complaint is dismissed for failure to exhaust, Plaintiff will still be responsible for payment of the full filing fee.

The law also provides that a prisoner cannot bring a new civil action or appeal a judgment in a civil action *in forma pauperis* if the prisoner has on three or more prior occasions, while incarcerated, brought a civil action or appeal in federal court that was dismissed because it was frivolous, malicious, or failed to state a claim upon which relief may be granted. The only exception to this "three strikes" rule is if the prisoner is in "imminent danger of serious physical injury." 28 U.S.C. § 1915(g).

Because of these requirements in the law, the court will give Plaintiff an opportunity, at this time, to voluntarily dismiss the complaint pursuant to Federal Rule of Civil Procedure 41(a)(1). Such a voluntary dismissal will not require Plaintiff to pay the filing fee or count as a dismissal which may later subject Plaintiff to the three-dismissal rule under section 1915(g). Plaintiff may dismiss his case at this time by filing a Notice of Dismissal.

However, should Plaintiff choose to proceed with his case, Plaintiff **MUST** comply with the following instructions:

(1) Plaintiff must furnish the enclosed **Prisoner Trust Fund Account Statement** to the trust (financial) officer of each prison where he has been confined for the past six months. The trust officer will complete and sign the form and return the form and supporting documents to Plaintiff for submission to the Court. Two copies of the form are enclosed for this purpose.

(2) Plaintiff must sign and date the enclosed **Consent to Collection of Fees from Trust Account**. By signing this form, Plaintiff gives his consent to the collection of the entire filing fee from his prison account in installments, in accordance with the provisions of the Prison Litigation Reform Act.

(3) Plaintiff must return both the **Prisoner Trust Account Statement** and the **Consent to Collection of Fees from Trust Account** to the Clerk within thirty days of this Order.

While this action is pending, the Plaintiff must **immediately** inform this Court in writing of any change of address. Failure to do so will result in dismissal of this case, without prejudice. If Plaintiff fails to return the required forms by **September 12, 2018**, the Court will dismiss Plaintiff's case without prejudice for failure to prosecute and follow this Court's Orders.

**II.     Frivolity Screening of Plaintiff's Complaint**

   **A.     Standard of Review**

Plaintiff seeks to bring this action *in forma pauperis*. Under 28 U.S.C. § 1915(a)(1), the Court may authorize the filing of a civil lawsuit without the prepayment of fees if the plaintiff submits an affidavit that includes a statement of all of his assets, shows an inability to pay the filing fee, and also includes a statement of the nature of the action which shows that he is entitled to redress. Even if the plaintiff proves indigence, the Court must dismiss the action if it is frivolous or malicious, or fails to state a claim upon which relief may be granted. 28 U.S.C. §§ 1915(e)(2)(B)(i)–(ii). Additionally, pursuant to 28 U.S.C. § 1915A, the Court must review a complaint in which a prisoner seeks redress from a governmental entity. Upon such screening, the Court must dismiss a complaint, or any portion thereof, that is frivolous, malicious, or fails to state a claim upon which relief may be granted or which seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b).

The Court looks to the instructions for pleading contained in the Federal Rules of Civil Procedure when reviewing a complaint on an application to proceed *in forma pauperis*. See Fed. R. Civ. P. 8 ("A pleading that states a claim for relief must contain [among other things] . . . a short and plain statement of the claim showing that the pleader is entitled to relief."); Fed. R. Civ. P. 10 (requiring that claims be set forth in numbered paragraphs, each limited to a single set of circumstances). Further, a claim is frivolous under Section 1915(e)(2)(B)(i) "if it is 'without arguable merit either in law or fact.'" Napier v. Preslicka, 314 F.3d 528, 531 (11th Cir. 2002) (quoting Bilal v. Driver, 251 F.3d 1346, 1349 (11th Cir. 2001)).

Whether a complaint fails to state a claim under Section 1915(e)(2)(B)(ii) is governed by the same standard applicable to motions to dismiss under Federal Rule of Civil

Procedure 12(b)(6). Thompson v. Rundle, 393 F. App'x 675, 678 (11th Cir. 2010). Under that standard, this Court must determine whether the complaint contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A plaintiff must assert "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not" suffice. Twombly, 550 U.S. at 555. Section 1915 also "accords judges not only the authority to dismiss a claim based on an indisputably meritless legal theory, but also the unusual power to pierce the veil of the complaint's factual allegations and dismiss those claims whose factual contentions are clearly baseless." Bilal, 251 F.3d at 1349 (quoting Neitzke v. Williams, 490 U.S. 319, 327 (1989)).

In its analysis, the Court will abide by the long-standing principle that the pleadings of unrepresented parties are held to a less stringent standard than those drafted by attorneys and, therefore, must be liberally construed. Haines v. Kerner, 404 U.S. 519, 520 (1972); Boxer X v. Harris, 437 F.3d 1107, 1110 (11th Cir. 2006) ("*Pro se* pleadings are held to a less stringent standard than pleadings drafted by attorneys . . . .") (quoting Hughes v. Lott, 350 F.3d 1157, 1160 (11th Cir. 2003)). However, Plaintiff's unrepresented status will not excuse mistakes regarding procedural rules. McNeil v. United States, 508 U.S. 106, 113 (1993) ("We have never suggested that procedural rules in ordinary civil litigation should be interpreted so as to excuse mistakes by those who proceed without counsel.").

### B. Dismissal of Implausible Claims

While the Court ordinarily presumes the truth of a plaintiff's allegations at the frivolity review stage, it need not accept claims that have no basis in reality. The Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997(e), "accords judges . . . the unusual power to pierce the

veil of the complaint's factual allegations and dismiss those claims whose factual contentions are clearly baseless." Bilal, 251 F.3d at 1349 (quoting Neitzke, 490 U.S. at 327). Examples of "clearly baseless" claims are those "'describing fantastic or delusional scenarios.'" Id. Plaintiff's claims that unnamed members of the security and medical staff at GSP implanted transmitters into him to monitor and manipulate his emotions, thoughts, and actions are pure fantasy. Faced with similar claims in the past, the Eleventh Circuit Court of Appeals and other courts have recognized the court's ability to dismiss such clearly baseless claims. See e.g., Williams v. St. Vincent Hosp., 258 F. App'x 293, 294 (11th Cir. 2007) ("The complaint presents a 'far-fetched' scenario based on assertions of a massive conspiracy to monitor [Plaintiff] that is 'clearly baseless.'"); Grant v. U.S. Gov't, No. 1:14-CV-01618-JLT, 2014 WL 6685035, at *4 (E.D. Cal. Nov. 25, 2014) ("Plaintiff's claims that the Government implanted a device in him can best be described as frivolous."); Alexander v. United States, No. 13-00678 JSC, 2013 WL 1789378, at *4 (N.D. Cal. Apr. 26, 2013) ("Plaintiff's allegations regarding the implanted tracking device and the ongoing conspiracy can only be described as fanciful, delusional, or wholly incredible."); Manco v. Does, No. 08-3205-SAC, 2009 WL 2356175, at *5 (D. Kan. July 29, 2009) (holding on frivolity review that prisoner plaintiff's claims that government and prison officials implanted and manipulated plaintiff with mind-reading and thought and behavior-controlling devices "wholly incredible and delusional and hence factually frivolous."); Fails v. Escambia Cty. Jail, No. 3:08CV415, 2009 WL 88493, at *2 (N.D. Fla. Jan. 12, 2009) ("Plaintiff's assertion that law enforcement officers, prison officials, medical personnel, and the local prosecutor have conspired to monitor and investigate him by implanting listening devices in his mouth falls into the very narrow category of allegations that are removed from reality and wholly incredible. Therefore, Plaintiff's complaint should be dismissed as factually frivolous.");

Payne v. Contra Costa Sheriff's Dep't, 2002 WL 1310748 at *1 (N.D.Cal. June 10, 2002) (denying leave to proceed *in forma pauperis* and dismissing inmate's complaint where he alleged that the sheriff's department was using telepathy and mind control to allow others to have access to his memories). Consequently I **RECOMMEND** that the Court **DISMISS as frivolous** Plaintiff's claims that Defendants have inserted electronic transmitters into him and that Defendants have sought to monitor and control his emotions, thoughts, and actions.

### C. Claims for Damages Against Defendants in Their Official Capacities

Plaintiff cannot sustain a Section 1983 claim for monetary damages against Defendants in their official capacities. States are immune from private suits pursuant to the Eleventh Amendment and traditional principles of state sovereignty. Alden v. Maine, 527 U.S. 706, 712–13 (1999). Section 1983 does not abrogate the well-established immunities of a state from suit without its consent. Will v. Mich. Dep't of State Police, 491 U.S. 58, 67 (1989). Because a lawsuit against a state officer in his official capacity is "no different from a suit against the [s]tate itself," such a defendant is immune from suit under Section 1983. Id. at 71. Here, the State of Georgia would be the real party in interest in a suit against Defendants in their official capacities as employees of the Georgia Department of Corrections. Accordingly, the Eleventh Amendment immunizes these actors from suit in their official capacities. See Free v. Granger, 887 F.2d 1552, 1557 (11th Cir. 1989). Absent a waiver of that immunity, Plaintiff cannot sustain any constitutional claims against Defendants in their official capacities for monetary relief, and the Court should **DISMISS** these claims.

### D. Supervisory Liability Claims Against Defendant Dozier

Section 1983 liability must be based on something more than a defendant's supervisory position or a theory of respondeat superior.[3] Bryant v. Jones, 575 F.3d 1281, 1299 (11th Cir. 2009); Braddy v. Fla. Dep't of Labor & Emp't Sec., 133 F.3d 797, 801 (11th Cir. 1998). A supervisor may be liable only through personal participation in the alleged constitutional violation or when there is a causal connection between the supervisor's conduct and the alleged violations. Id. at 802. "To state a claim against a supervisory defendant, the plaintiff must allege (1) the supervisor's personal involvement in the violation of his constitutional rights, (2) the existence of a custom or policy that resulted in deliberate indifference to the plaintiff's constitutional rights, (3) facts supporting an inference that the supervisor directed the unlawful action or knowingly failed to prevent it, or (4) a history of widespread abuse that put the supervisor on notice of an alleged deprivation that he then failed to correct." Barr v. Gee, 437 F. App'x 865, 875 (11th Cir. 2011).

Plaintiff has sued Defendant Dozier based solely on his position as the Commissioner of the Georgia Department of Corrections. Plaintiff does not allege any facts that could lead to the plausible conclusion that Defendant Dozier was personally involved in or otherwise causally connected to other Defendant's alleged use of force or any other allegation in the Complaint. Accordingly, the Court should **DISMISS** Plaintiff's claims against Defendant Dozier.

### E. Plaintiff's Remaining Claims

In his remaining allegations, Plaintiff potentially sets forth claims that Defendants Brooks, Walker, and Davis violated the Eighth Amendment's prohibition against cruel and unusual punishment by using excessive force on January 16, 2017, and failing to intervene in

---

[3] The principle that respondeat superior is not a cognizable theory of liability under Section 1983 holds true regardless of whether the entity sued is a state, municipality, or private corporation. Harvey v. Harvey, 949 F.2d 1127, 1129–30 (11th Cir. 1992).

each other's use of force. He also potentially alleges Eighth Amendment claims against Defendants Hutcheson, Shumake, and Allen regarding the October 31, 2017 use of force. Additionally, though his factual allegations surrounding his disciplinary proceedings are unclear, it appears he may be able to state a claim for violation of his rights to due process.

However, Plaintiff cannot pursue unrelated claims in one Section 1983 Complaint. Smith v. Owens, No. 14-14039, 2015 WL 4281241, at *4 (11th Cir. July 16, 2015) (upholding this Court's dismissal of unrelated claims pursuant to Federal Rule of Civil Procedure 20(a), which will allow the joinder of claims if the claims arise "out of the same transaction, occurrence, or series of transactions or occurrences" and if "any question of law or fact common to all defendants will arise in the action."). Other than the fact that both incidents allegedly occurred at GSP, Plaintiff's claims against Defendants Brooks, Walker, and Davis regarding events that occurred in January of 2017 and his claims against Defendants Hutcheson, Shumake, and Allen regarding events that occurred nine months later have no relation to one another. Moreover, he has not sufficiently explained how his due process claims are related to any of these Eighth Amendment claims. Plaintiff attempts to connect these claims by alleging that, "on information and belief" defendants in his prior lawsuits and their attorneys are being criminally prosecuted by the United States for their involvement in his prior civil cases. (Doc. 1, p. 8.) Thus, he claims that Defendants are conspiring to prevent him from participating in those proceedings. (Id.) Plaintiff does not cite any reason why he believes that defendants from his prior lawsuits are being prosecuted. Moreover, even if they were being prosecuted, he fails to connect that prosecution with the allegations he raises in this lawsuit through anything more than his conclusory allegations.

Given the lack of relation between Plaintiff's claims, the Court could dismiss his lawsuit at this time. However, the Court will afford Plaintiff an opportunity to amend his Complaint to assert related and plausible claims. The Court **DIRECTS** Plaintiff to file an Amended Complaint within **fourteen (14) days** from the date of this Order. The Court informs Plaintiff that he may not join unrelated claims and various defendants unless the claims "arise out of the same transaction, occurrence, or series of transactions or occurrences; and any question of law or fact common to all defendants will arise in the action." Fed. R. Civ. P. 20(a). Should Plaintiff seek to pursue unrelated claims, he must do so through a separate action. The Court also **DIRECTS** Plaintiff to:

(1) draft his Amended Complaint on the complaint form provided by the Clerk of Court;

(2) clearly caption it as an amendment to the original complaint and place the civil action number of this case on the first page of the form;

(3) add no more than ten pages to the form;

(4) write legibly and only on one side of each page;

(5) provide the name of each intended defendant;

(6) provide only factual allegations concerning events where the rights of Plaintiff himself were violated or Plaintiff himself was injured, including the date and location of each alleged violation;

(7) only assert claims that arose from the same transaction or occurrence or series of related transactions or occurrences;

(8) clearly identify each defendant responsible for each alleged violation;

(9) omit all legal argument or conclusions;

(10) provide complete information on the administrative relief Plaintiff has pursued, including whether he has filed any grievance on the claims he asserts in this action, the outcome of any grievance, and whether Plaintiff filed any appeal regarding any grievance; and

(11) provide detailed information on all prisoner civil actions Plaintiff has filed.

The Court **DIRECTS** the Clerk of Court to forward the appropriate 42 U.S.C. § 1983 complaint form to Plaintiff, together with a copy of this Order. Failure to timely file an Amended Complaint using this form and following the instructions above will result in a dismissal of this case. Once Plaintiff has amended his Complaint and returned the above-referenced *in forma pauperis* forms, the Court will review Plaintiff's amended complaint as required by 28 U.S.C. § 1915A to determine which, if any, claims are viable and which, if any, Defendants should be served with a copy of the Complaint.

## CONCLUSION

For the reasons set forth above, I **RECOMMEND** that the Court **DISMISS** Plaintiff's claims that Defendants have implanted transmitters into Plaintiff and all claims related to those allegations. I also **RECOMMEND** that the Court **DISMISS** Plaintiff's claims for monetary damages against Defendants in their official capacities and **DISMISS** Plaintiff's claims against Defendant Gregory Dozier. As to Plaintiff's remaining claims, the Court **DIRECTS** Plaintiff to file an Amended Complaint in accordance with the instructions above within **fourteen (14) days** of this Order. The Court **GRANTS** Plaintiff's Motion to Proceed *in Forma Pauperis*, (doc. 4), but **DENIES** Plaintiff's Motions for Subpoenas and Expert Witness and Physical Examination, (docs. 6, 8).

The Court **ORDERS** any party seeking to object to this Report and Recommendation to file specific written objections within **fourteen (14) days** of the date on which this Report and Recommendation is entered. Any objections asserting that the Magistrate Judge failed to address any contention raised in the Complaint must also be included. Failure to do so will bar any later challenge or review of the factual findings or legal conclusions of the Magistrate Judge. See 28

U.S.C. § 636(b)(1)(C); Thomas v. Arn, 474 U.S. 140 (1985). A copy of the objections must be served upon all other parties to the action.

Upon receipt of Objections meeting the specificity requirement set out above, a United States District Judge will make a *de novo* determination of those portions of the report, proposed findings, or recommendation to which objection is made and may accept, reject, or modify in whole or in part, the findings or recommendations made by the Magistrate Judge. Objections not meeting the specificity requirement set out above will not be considered by a District Judge. A party may not appeal a Magistrate Judge's report and recommendation directly to the United States Court of Appeals for the Eleventh Circuit. Appeals may be made only from a final judgment entered by or at the direction of a District Judge. The Court **DIRECTS** the Clerk of Court to serve a copy of this Report and Recommendation upon Plaintiff.

**SO ORDERED** and **REPORTED and RECOMMENDED**, this 13th day of August, 2018.

R. STAN BAKER
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA